## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| Jim Wilmoth, | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **CV NO.:** |
| | ) | |
| **V.** | ) | |
| | ) | |
| Alorica Customer Care, Inc and | ) | **JURY TRIAL DEMANDED** |
| Melissa Horn, | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## COMPLAINT

## I.   JURISDICTION

1.      The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  District Court jurisdiction exists under 29 U.S.C. §§ 215(a)(3) and 217 and 28 U.S.C. § 1331.  The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA.

2.      This Court has supplemental jurisdiction over Plaintiffs' work and labor done claims and Assault and Battery claims arising under the laws of Alabama under 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' claims under federal wage and hour law they form part of the same case or controversy and derive from a common nucleus of operative facts.

1

## II.  PARTIES

3.     Plaintiff, Jim Wilmoth ("Plaintiff"), is a resident of Fairhope, County, Alabama, and performed work for Alorica in the counties composing the Southern District of Alabama during the events of this case.  Plaintiff was an employee within the contemplation of 29 U.S.C. § 203(e)(1).  Pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Southern District of Alabama, Southern Division.

4.     Defendant, Alorica Customer Care, Inc., ("Alorica"), is a company registered and doing business in the State of Alabama.  Therefore, this Court has personal jurisdiction over Alorica.  Alorica is engaged in commerce from the production of goods as contemplated by 29 U.S.C. §§ 203(r), 203(s).

5.     Defendant, Melissa Horn., ("Horn"), is a resident of Jackson, Clarke County.  Therefore, this Court has personal jurisdiction over Horn.  Alorica employed Horn as Plaintiff's supervisor, as such she is a person subject to suit as contemplated by 29 U.S.C. §§ 203(a), 203(d).

## III.  STATEMENT OF FACTS

6.     Plaintiff incorporates by reference each allegation contained in the previous paragraphs.

7.     Alorica hired Plaintiff on or about August 15, 2016, as a Customer Service Representative.

8.     Alorica assigned Plaintiff a schedule of 40 hours per week and mandating overtime, as assigned.

9.     Alorica terminated Plaintiff's employment on December 4, 2017.

10.    At the time of Plaintiff's termination, Alorica labeled Plaintiff's job title as that of "Customer Service Representative."

11.    Plaintiff reported to supervisors including Brittany Chandler, Mekussa Horn, Minnie Allen, Pamela Payne, Kimberly (LNU), James Patterson, Carla Trotter, and Alexis (LNU).

12.    Alorica has no physical time clock system in its office.

13.    Instead, Alorica relies upon its employees to log into two computer systems to notate the hours they work.

14.    One of the computer systems Alorica uses for timekeeping is the "NICE" system.

15.    Due to operational realities, there are reasons that an employee could be working, but not be able to clock in to the systems.

16.    When a supervisor requires an employee to move desks the employee must log-off of the computer he or she is working on and re-log in to a different computer.

17.    When there are system difficulties, the employee can be required to log-off and log in to a different computer.

3

18.   These transitions required employees, like Plaintiff, to report their off the clock work to their supervisors so it could be adjusted in the computer system.

19.   Defendant failed or refused to provide Plaintiff with login credentials for the NICE system.

20.   Since Plaintiff had no login, to report his time, he had to seek the assistance of his supervisor to accurately report the time he worked.

21.   When Melissa Horn was Plaintiff's supervisor, she established a near daily pattern of moving Plaintiff's seating assignment.

22.   Horn would then assign Plaintiff to desks that had no working equipment.

23.   Horn's behavior caused Plaintiff's time to be underreported.

24.   Horn's behavior caused Plaintiff's time in the system to be short between seven and thirty minutes on each occasion.

25.   Horn's behavior caused Plaintiff to have discrepancies in his time that ranged between one and two hours each work week.

26.   Plaintiff reported his time corrections to Horn, but these corrections were not reflected in more than half of the instances he reported.

27.   Alorica employed Joyce Keys in the position of Payroll Clerk.

28.   In March of 2017, Plaintiff reported to Keys that his pay was incorrect.

29.   Plaintiff told Keys he had been shorted straight pay and overtime pay.

4

30.     Plaintiff also reported that he had not been paid the bonus and incentive pay he was due under Alorica's compensation plan.

31.     Keys told Plaintiff she only handled straight pay and that if Plaintiff's number of hours was incorrect, he should contact his direct supervisor to correct it.

32.     Alorica employed Sha (LNU).

33.     Alorica employed Sha (LNU) as an Assistant to the Site Manager.

34.     Keys directed Plaintiff to contact the Site Manager's assistant, Sha (LNU) to look into his bonus and overtime pay discrepancies.

35.     When Plaintiff contacted Sha (LNU), she confirmed that Plaintiff had not been paid his incentive overtime as promised under Alorica's compensation plan.

36.     Horn became angry after Plaintiff made complaints about his overtime and straight pay discrepancies.

37.     Eventually, Horn told Plaintiff she would approve no changes to his pay for the hours that he worked off the clock.

38.     Alorica employed Anthony Bloom in the position of Site Manager.

39.     In May of 2017, Plaintiff reported his time discrepancies to Bloom.

40.     After meeting with Bloom, Plaintiff followed up via email several times to ensure that his time would be corrected and that he would be paid the overtime and incentive pay he was entitled to.

5

41.     Bloom never responded to Plaintiff's emails and Plaintiff's pay discrepancies were not corrected.

42.     Plaintiff could not certify his time cards because the time cards did not reflect the actual hours that Plaintiff worked, resulting in a shortage in overtime pay.

43.     Bloom became annoyed with Plaintiff's emails.

44.     Eventually, Bloom announced to all of Alorica's employees he would not address the issues that Plaintiff had raised about how overtime and incentive pay were calculated.

45.     On or about August 14, 2017, Plaintiff was on a customer call when a group of employees, including Melissa Horn, were having a conversation nearby.

46.     The conversation became boisterous.

47.     After the customer commented that she heard the background noise, Plaintiff calmly asked the group to quiet down.

48.     The group told him to, "Go Fuck Yourself."

49.     Plaintiff continued to assist the Customer, but the group became even louder.

50.     Alorica employed James Patterson as a Supervisor.

51.     Plaintiff approached Patterson about Horn and the other noisy coworkers and Patterson advised him to ask the group to quiet down.

52.    Plaintiff went back to the group at Patterson's direction and asked them once again to quiet down.

53.    Plaintiff returned to his desk and tried to resume taking calls again.

54.    When Horn's group got louder, Plaintiff went back to Patterson who told him to try again to get the group to quiet down.

55.    Plaintiff once again asked the group to quiet down.

56.    The group berated Plaintiff again.

57.    Horn became enraged and yelled.

58.    Horn said, "You are not a big man around here, you are a liar. You will not call me a liar."

59.    Then Horn said, "I am going to get you," and called Plaintiff a "Motherfucker."

60.    Next, Horn punched Plaintiff in his upper right arm, leaving a mark.

61.    Horn continued to yell and scream but Plaintiff got back on the phone and concluded the customer call.

62.    Plaintiff went to Patterson and reported the assault after finishing the phone call.

63.    Plaintiff reported his assault to Alorica's Human Resources Department

64.    Alorica's Human Resources Department purportedly investigated.

65.    While the investigation was pending, Plaintiff continued to ask for updates regarding his pay discrepancies and the assault.

66.    The day after Plaintiff's complaint to Patterson, Patterson issued a disciplinary warning to Plaintiff for spending too much time between calls.

67.    Patterson accused Plaintiff of spending too much time between calls for the time that Plaintiff was trying to get Horn to quiet down so he could perform his job.

68.    Plaintiff complained to Alorica's Human Resources Department about being improperly written up.

69.    Alorica employed Deborah Johnson as a Human Resources Representative.

70.    Johnson reviewed the call-in question and found that the alleged call that supported the write up was not Plaintiff's.

71.    Despite this, Alorica failed to remove the erroneous write up from Plaintiff's record.

72.    Alorica employed Daniello Glisson as a Supervisor.

73.    As part of her job duties, Glisson supervised Plaintiff.

74.    At the end of October 2017, Plaintiff met with Bloom, Johnson, and Glisson about Plaintiff's assault, discrepancies in pay, and all pending investigations.

8

75.    During the meeting, Bloom told Plaintiff he would no longer report to Horn but refused to tell him anything else about the investigation.

76.    On or about November 21, 2017, Plaintiff came in on his off day and wrote a detailed email about the assault, his overtime, straight and bonus pay discrepancies, and Alorica's failure to resolve those issues.

77.    Plaintiff also sent several follow up emails detailing his concerns.

78.    Alorica employed Carla Trotter as a Supervisor

79.    As part of her job duties, Trotter supervised Plaintiff.

80.    Alorica maintains a policy that write-ups fall off after 60 days.

81.    On or about November 27, 2017, Carla Trotter, issued Plaintiff a final warning for spending too much time between calls.

82.    The warning cited the erroneous August write up, even though it was false and should have fallen off of Plaintiff's record under Alorica's policy.

83.    On or about December 4, 2017, Trotter called Plaintiff into a meeting and told him that his employment was being terminated because he had not properly verified four callers in the prior week.

84.    Plaintiff protested this accusation was not true and asked to hear these phone calls.

85.    Alorica initially told Plaintiff he did not have the right to listen to the phone calls.

9

86.     Eventually, Alorica allowed Plaintiff to listen to the phone calls in Bloom's office.

87.     When Bloom listened to the calls, he said that Plaintiff did not fail to verify as accused.

88.     Then Bloom said that unless other information existed against Plaintiff, Plaintiff should have been sent back to his desk.

89.     But Alorica terminated Plaintiff's employment.

## IV.    COUNT ONE – FLSA – Overtime Violations Against All Defendants

90.     Plaintiff incorporates by reference each allegation contained in the previous paragraphs.

91.     During the three years preceding filing this Complaint, Plaintiff worked over forty hours in one or more work weeks.

92.     During the three years preceding filing this Complaint, Alorica did not pay Plaintiff one and one-half times his regular hourly rate of pay for hours worked over forty in a work week.

93.     At the time of Plaintiff's termination, Alorica labeled Plaintiff's job title as that of "Customer Service Representative."

94.     Plaintiff reported to supervisors including Brittany Chandler, Melissa Horn, Minnie Allen, Pamela Payne, Kimberly (LNU), James Patterson, Carla Trotter, and Alexis (LNU).

10

95. Alorica has no physical time clock system in its office.

96. Instead, Alorica relies upon the employees to log into two computer systems to notate the hours they work.

97. One of the computer systems Alorica uses for timekeeping is the "NICE" system.

98. Due to operational realities, there are reasons that an employee could be working, but not be able to clock in to the two systems.

99. When a supervisor requires an employee to move desks the employee must log-off of the computer they are working on and re-log in to a different computer.

100. When there are system difficulties, the employee can be required to log-off and log in to a different computer.

101. These transitions required employees to report their off the clock work to their supervisors so it could be adjusted in the computer system.

102. Defendant failed or refused to provide Plaintiff with login credentials for the NICE system.

103. Since Plaintiff had no login, to report his time, he had to seek the assistance of his supervisor to accurately report the time he worked.

104. When Melissa Horn was Plaintiff's supervisor, she established a near daily pattern of moving Plaintiff's seating assignment.

11

105.  Horn's behavior caused Plaintiff's time to be underreported.

106.  Horn's behavior caused Plaintiff's time to be always shorted between seven and thirty minutes.

107.  Horn's behavior caused Plaintiff to have discrepancies in his time that ranged between one and two hours weekly.

108.  Plaintiff reported his time corrections to Horn, but these corrections were not reflected in more than half of the instances he reported.

109.  Alorica employed Joyce Keys.

110.  Alorica employed Joyce Keys in the position of Payroll Clerk.

111.  In March of 2017, Plaintiff reported to Keys that his pay was incorrect.

112.  Plaintiff told Keys he had been been shorted straight pay and overtime pay.

113.  Plaintiff had also not been paid the bonus and incentive pay he was due under Alorica's compensation plan.

114.  Keys told Plaintiff she only handled straight pay and that if Plaintiff's number of hours was incorrect, he should contact his direct supervisor to correct it.

115.  Alorica employed Sha (LNU).

116.  Alorica employed Sha (LNU) as an Assistant to the Site Manager.

117.  Keys directed Plaintiff to contact the Site Manager's assistant, Sha (LNU) to look into his bonus and overtime premium discrepancies.

118.   Sha confirmed that Plaintiff had not been paid his incentive overtime as promised under Alorica's compensation plan.

119.   Horn became angry after Plaintiff made complaints about his overtime, straight and bonus pay discrepancies.

120.   Eventually, Horn told Plaintiff she would approve no changes to his pay for the hours that he worked off the clock.

121.   In May of 2017, Plaintiff reported his time discrepancies to Site Manager, Anthony Bloom.

122.   After meeting with Bloom, Plaintiff followed up via email several times to ensure that his time would be corrected and that he would be paid the incentive pay he was entitled to.

123.   Bloom never responded to Plaintiff's emails and Plaintiff's overtime, straight and bonus pay discrepancies were not corrected.

124.   Plaintiff could not certify his time cards because the time cards did not reflect the actual hours that Plaintiff worked, resulting in a shortage in overtime pay.

125.   Bloom became annoyed with Plaintiff's emails.

126.   Eventually, Bloom announced to all of Alorica's employees by stating that he would not address the issues that Plaintiff had raised about how overtime and incentive pay were calculated.

127.   Plaintiff continued to ask for updates regarding his pay discrepancies and Melissa Horn's assault of him while Alorica's Human Resources Department's investigation was pending.

128.   The day following Plaintiff's complaint to Patterson, Patterson issued a disciplinary warning to Plaintiff for spending too much time between calls.

129.   Patterson accused Plaintiff of spending too much time between calls while Plaintiff was trying to get Horn to quiet down so he could perform his job.

130.   Plaintiff complained to Alorica's Human Resources Department about being improperly written up.

131.   Alorica employed Deborah Johnson.

132.   Alorica employed Deborah Johnson as a Human Resources Representative.

133.   When Johnson reviewed the call-in question, she confirmed that the alleged call was not Plaintiff's.

134.   Despite this, Alorica refused to remove the erroneous write up from Plaintiff's record.

135.   Alorica employed Daniello Glisson.

136.   At the end of October 2017, Plaintiff met with Bloom, Johnson, and Daniello Glisson about Plaintiff's assault, discrepancies in pay and all pending investigations.

14

137.   During the meeting, Bloom told Plaintiff he would no longer report to Horn but refused to tell him anything else about the investigation.

138.   On or about November 21, 2017, Plaintiff came in on his off day and wrote a detailed email about the assault, his overtime, straight and bonus pay discrepancies, and Alorica's failure to resolve those issues.

139.   Because of Alorica's computer systems and managerial decisions, Plaintiff was forced to log-off and log-in to various time per work day, and multiple times per work week, Plaintiff suffered a loss of overtime compensation for the weeks in which he worked over forty hours.

140.   Plaintiff reported the loss of straight pay and overtime pay to Alorica's management employees on multiple occasions, so Alorica knew of the unpaid labor.

141.   Because of Alorica's actions, Plaintiff suffered loss of overtime wages.

## V.   COUNT TWO - FLSA RETALIATION TERMINATION Against Alorica

142.   Plaintiff incorporates by reference each allegation contained in the previous paragraphs.

143.   During the three years preceding filing this Complaint, Alorica is an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. 203(s)(1).

144.   During the three years preceding filing this Complaint, Alorica has been a company whose employees, including the Plaintiff, are engaged in interstate

15

commerce and whose employees handle and/or work on goods moved in and/or produced in commerce.

145.   Alorica's gross annual volume of revenue exceeds $500,000.

146.   Alorica was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

147.   During the three years preceding filing this Complaint, Plaintiff, was an employee of Alorica as defined by 29 U.S.C. § 203(e)(1).

148.   Plaintiff was engaged in interstate commerce and/or the production of goods for interstate commerce while working for Alorica.   Plaintiff's interstate commercial activity included using the instruments of interstate commerce that effectuate communications with persons across state lines wherein the phone calls originated outside of the State of Alabama and were received by Plaintiff in the State of Alabama or originated by Plaintiff inside of the State of Alabama and were received or taken by customers outside of the State of Alabama.

149.   During the three years preceding filing this Complaint, Alorica recorded Plaintiff's hours worked over forty hours for a work week on at least one or more occasion.

150.   Alorica intentionally violated the FLSA by failing to pay Plaintiff for overtime hours worked with no basis.

151.   Alorica hired Plaintiff on or about August 15, 2016.

152.   Alorica terminated Plaintiff's employment on December 4, 2017.

153.   At the time of Plaintiff's termination, Alorica labeled Plaintiff's job title as that of "Customer Service Representative."

154.   Plaintiff reported to supervisors including Brittany Chandler, Melissa Horn, Minnie Allen, Pamela Payne, Kimberly (LNU), James Patterson, Carla Trotter, and Alexis (LNU).

155.   Alorica has no physical time clock system in its office.

156.   Instead, Alorica relies upon the employees to log into two computer systems to notate the hours they work.

157.   One of the computer systems Alorica uses for timekeeping is the "NICE" system.

158.   Due to operational realities, there are reasons that an employee could be working, but not be able to clock in to the systems.

159.   When a supervisor requires an employee to move desks the employee must log-off of the computer they are working on and re-log in to a different computer.

160.   When there are system difficulties, the employee can be required to log-off and log in to a different computer.

161.   These transitions required employees to report their off the clock work to their supervisors so it could be adjusted in the computer system.

162.   Defendant failed or refused to provide Plaintiff with login credentials for the NICE system.

163.   Since Plaintiff had no login, to report his time, he had to seek the assistance of his supervisor to accurately report the time he worked.

164.   When Melissa Horn was Plaintiff's supervisor, she established a near daily pattern of moving Plaintiff's seating assignment.

165.   Horn would then assign Plaintiff to desks that had no working equipment.

166.   Horn's behavior caused Plaintiff's time to be underreported.

167.   Horn's behavior caused Plaintiff's time to be shorted up between seven and thirty minutes on each occasion.

168.   Horn's behavior caused Plaintiff to have discrepancies in his time that ranged between one and two hours weekly.

169.   Plaintiff reported his time corrections to Horn, but these corrections were not reflected in more than half of the instances he reported.

170.   Alorica employed Joyce Keys.

171.   Alorica employed Joyce Keys in the position of Payroll Clerk.

172.   In March of 2017, Plaintiff reported that his pay was incorrect to Keys.

173.   Plaintiff had been shorted straight pay and overtime pay.

174.   Plaintiff had also not been paid the bonus and incentive pay he was due under Alorica's compensation plan.

175.   Keys told Plaintiff she only handled straight pay and that if Plaintiff's number of hours was incorrect, he should contact his direct supervisor to correct it.

176.   Alorica employed Sha (LNU).

177.   Alorica employed Sha (LNU) as an Assistant to the Site Manager.

178.   Keys directed Plaintiff to contact the Site Manager's assistant, Sha (LNU) to look into his bonus and overtime premium discrepancies.

179.   Sha confirmed that Plaintiff had not been paid his incentive overtime as promised under Alorica's compensation plan.

180.   Horn became angry after Plaintiff made complaints about his overtime, straight and bonus pay discrepancies.

181.   Eventually, Horn told Plaintiff she would approve no changes to his pay for the hours that he worked off the clock.

182.   Alorica employed Anthony Bloom.

183.   Alorica employed Anthony Bloom in the position of Site Manager.

184.   In May of 2017, Plaintiff reported his time discrepancies to Bloom.

185.   After meeting with Bloom, Plaintiff followed up via email to ensure that his time would be corrected and that he would be paid the incentive pay he was entitled to.

19

186.   Bloom never responded to Plaintiff's emails and Plaintiff's overtime, straight and bonus pay discrepancies were not corrected.

187.   Plaintiff could not certify his time cards because the time cards did not reflect the actual hours that Plaintiff worked, resulting in a shortage in overtime pay.

188.   Bloom became annoyed with Plaintiff's emails.

189.   Eventually, Bloom announced to all of Alorica's employees by stating that he would not address the issues that Plaintiff had raised about how overtime and incentive pay were calculated.

190.   On or about August 14, 2017, Plaintiff was on a customer call when a group of employees, including Melissa Horn were having a conversation nearby.

191.   The conversation became boisterous.

192.   After the customer commented that she heard the background noise, Plaintiff calmly asked the group to quiet down.

193.   The group told him to, "Go Fuck Yourself."

194.   Plaintiff continued to assist the Customer, but the group became even louder.

195.   Alorica employed James Patterson.

196.   As part of his job duties, James Patterson supervised Plaintiff.

197.   Plaintiff approached Patterson about his noisy co-workers and Patterson advised him to ask the group to quiet down.

20

198.   Plaintiff went back to the group at Patterson's direction and asked them once again, to quiet down.

199.   Plaintiff returned to his desk and tried to resume taking calls.

200.   When Horn's group got louder, Plaintiff went back to Patterson who told him to try again to get the group to quiet down.

201.   Plaintiff once again asked the group to quiet down.

202.   The group berated Plaintiff again.

203.   Horn became enraged and yelled.

204.   Horn said, "You are not a big man around here, you are a liar. You will not call me a liar."

205.   Then Horn said, "I am going to get you," and called Plaintiff a "Motherfucker."

206.   Eventually, Horn punched Plaintiff in his upper right arm, leaving a mark.

207.   Horn continued to yell and scream but Plaintiff got back on the phone and concluded the customer call.

208.   Plaintiff went to Patterson and reported the assault after finishing the phone call.

209.   Plaintiff reported his assault to Alorica's Human Resources Department

210.   Alorica's Human Resources Department purportedly investigated.

21

211.   While the investigation was pending, Plaintiff continued to ask for updates regarding his overtime, straight and bonus pay discrepancies and the assualt.

212.   The day following Plaintiff's complaint to Patterson, Patterson issued a disciplinary warning to Plaintiff for spending too much time between calls.

213.   Patterson accused Plaintiff of spending too much time between calls for the time that Plaintiff was trying to get Horn to quiet down so he could perform his job.

214.   Plaintiff complained to Alorica's Human Resources Department about being improperly written up.

215.   Alorica employed Deborah Johnson.

216.   Alorica employed Deborah Johnson as a Human Resources Representative.

217.   Johnson reviewed the call-in question and found that the alleged call that supported the write up was not Plaintiff's.

218.   Despite this, Alorica failed to remove the erroneous write up from Plaintiff's record.

219.   Alorica employed Daniello Glisson.

220.   At the end of October 2017, Plaintiff met with Bloom, Johnson, and Daniello Glisson about Plaintiff's assault, discrepancies in pay and all pending investigations.

221.   During the meeting, Bloom told Plaintiff he would no longer report to Horn but refused to tell him anything else about the investigation.

222.   On or about November 21, 2017, Plaintiff came in on his off day and wrote a detailed email about the assault, his overtime, straight and bonus pay discrepancies, and Alorica's failure to resolve those issues.

223.   Alorica employed Carla Trotter.

224.   As part of her job duties, Trotter supervised Plaintiff.

225.   Alorica maintains a policy that write ups fall off after 60 days.

226.   On or about November 27, 2017, Carla Trotter issued Plaintiff a final warning for spending too much time between calls.

227.   The warning cited the erroneous August write up, even though it was false and should have fallen off of Plaintiff's record under Alorica's policy.

228.   On or about December 4, 2017, Trotter called Plaintiff into a meeting and told him that his employment was being terminated because he had not properly verified four failed verifications in the prior week.

229.   Plaintiff protested this accusation was not true and asked to hear these phone calls.

230.   Alorica initially told Plaintiff he did not may listen to the phone calls.

231.   Eventually, Alorica allowed Plaintiff to listen to the phone calls in Bloom's office.

232.   When Bloom listened to the calls, he said that Plaintiff did not fail verification.

233.   Then Bloom said that unless other information existed against Plaintiff, Plaintiff should have been sent back to his desk.

234.   But Alorica terminated Plaintiff's employment.

235.   Alorica did not terminate the employment of another coworker who committed the same infraction.

236.   Alorica retaliated against Plaintiff by terminating his employment because he asked why he had not been paid for all overtime hours worked.

237.   Alorica's actions in terminating Plaintiff violated the FLSA.

238.   Because of Alorica's willful and intentional violation of the FLSA, Plaintiff has suffered loss of pay, benefits, and other compensatory damages.

## VI.   COUNT THREE - WORK AND LABOR DONE against Alorica

239.   Plaintiff incorporates by reference each allegation contained in the previous paragraphs.

240.   Between August 15, 2016, and December 4, 2017, Plaintiff worked and labor for Alorica at Alorica's request.

241.   Alorica has failed or refused to pay for the work and labor.

242.   Alorica knew of Plaintiff's work and labor and has refused to compensate Plaintiff for such work and labor.

243. Plaintiff expected Alorica to compensate Plaintiff for the labor Alorica failed and/or refused to pay.

244. Because of Alorica's actions, Plaintiff suffered loss of straight pay and overtime pay for work & labor performed.

## VII.   COUNT FOUR – ASSAULT AND BATTERY against Melissa Horn

245. Plaintiff incorporates by reference each allegation contained in the previous paragraphs.

246. Alorica employed Horn as a Supervisor.

247. On or about August 14, 2017, Horn made statements intended to create a reasonable and well-founded apprehension of imminent harm to Plaintiff's person when she said, "I am going to get you" and called him a "motherfucker".

248. Horn did engage in unlawful harmful and offensive touching when immediately after threatening plaintiff, she punched him.

249. Because of Horn's tortious conduct Plaintiff was harmed, causing him physical pain, mental anguish, and emotional suffering.


**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.    The Court issue proper process to compel Alorica to answer or otherwise plead to the allegations in the Complaint;

25

B.      Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Fair Labor Standards Act;

C.      Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position  would have had, had  not been terminated.

D.      Award Plaintiff his back overtime pay, plus an additional equal amount as liquidated damages; back pay, front pay, compensatory damages, liquidated damages, punitive damages, nominal damages; and special damages;

E.      Award Plaintiff Plaintiff's unpaid straight time, incentive, and bonus pay;

D.      That Plaintiff be granted judgment against Alorica for all reasonable attorneys' fees, costs, disbursements and interest; and

E.      For such other and further relief as this Court deems equitable, proper and just under the law or equity.

26

_____
Kira Fonteneau

_____
Felicia T. Long

**OF COUNSEL:**

THE FONTENEAU FIRM LLC
A Member of The Points Law Group, LLC
2151 Highland Avenue South, Suite 205
Birmingham, Alabama 35205
T: 205-564-9005
F: 205-564-9006

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
Of Counsel

**SERVE ALORICA AT:**
ALORICA CUSTOMER CARE, INC.
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104